IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (617) 480-7583 | Case No. _____<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Christopher Deaton, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (617) 480-7583 (the "Target Cell Phone"), whose service provider is AT&T Mobility, a wireless telephone service provider headquartered at 11760 U.S. Highway One, Mail Drop Suite 600, North Palm Beach, Florida. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      I am a Deputy United States Marshal and have been so employed by the United States Marshals Service ("USMS") since 2003.  I am a federal law enforcement officer pursuant to Fed. R. Crim. P. 41.  I have participated in investigations of violations of federal and state laws and, among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations.  Through my training, education and experience, I have become familiar with the manner in which electronic surveillance is utilized.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that CHRISTOPHER RABBIA, a/k/a "Christopher Marabella," a/k/a "Christopher Mirabella," has violated Title 18, United States Code, Section 3583 (supervised release violation).  RABBIA is the subject of an arrest warrant issued on or about January 6, 2015.  There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting RABBIA, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## PROBABLE CAUSE

5.      The USMS is conducting a fugitive investigation concerning RABBIA, whose last known address was ⬛⬛⬛⬛⬛⬛⬛⬛⬛ in Manchester, New Hampshire, who has violated his conditions of Supervised Release, in violation of 18 U.S.C. § 3583.

6.      Public records show that RABBIA was released from the custody of the Federal Bureau of Prisons after serving a prison sentence for health care fraud and aggravated identity theft offenses.  After being released from prison, RABBIA began to serve a term of supervised release.

7.      On January 6, 2015, U.S. Probation Officer Paul Daniel filed a petition for a warrant for an offender under supervision in regards to RABBIA.   I have had an opportunity to review the petition, which stated that the defendant failed to comply with a condition of release that required him to answer truthfully all inquiries by the probation officer and follow instructions of the probation officer.

8.      According to the petition, on December 19, 2014, RABBIA was directed by Supervising U.S. Probation Officer Daniel Gildea to go to the New Horizon Shelter to reserve a bed for that evening and to return to the probation office at 11:30 a.m.  He failed to do so.  To date, RABBIA has failed to return to, or contact the probation office, and his current whereabouts are unknown.

9.      On January 6, 2015, the United States District Court for the District of New Hampshire issued an arrest warrant for RABBIA for a violating of his conditions of supervised release imposed pursuant to convictions for health care fraud and aggravated identity theft.

10.     The arrest warrant has been turned over to the USMS, New Hampshire Joint Fugitive Task Force, to locate and arrest RABBIA.  Since the issuance of the arrest warrant on January 6, 2015, members of the USMS and local law enforcement have made several attempts to locate and arrest RABBIA in New Hampshire.  All such efforts, which have included searching for RABBIA in New Hampshire at locations he has previously been known to frequent, have been unsuccessful.

11.     On April 2, 2015, I conducted a telephonic interview of Darrell LEE, a private citizen who had contacted the USMS with information pertaining to the location of RABBIA. During this interview, LEE stated that he had meet a male calling himself "Christopher Marabella" at his place of employment, City Side REMAX, in Providence Rhode Island. Criminal history records show that "Christopher Mirabella" (a very similar name) is a known alias of RABBIA.  LEE stated that RABBIA had come into the REMAX office looking to purchase a property and willing to pay in cash. LEE further stated he spent 30 to 35 minutes driving RABBIA to various properties in the Providence area. RABBIA was never taken inside any of the properties. Then per RABBIA'S request, LEE dropped him off at a Whole Food

Grocery store in Providence.   RABBIA provided LEE with the following contact information, a

cell phone number of (617) 480-7583 (the Target Cell Phone) and an e-mail address of

███████████@gmail.com.

12.     LEE stated that RABBIA had implied that he was a member of a prominent local

family (last name MARABELLA).  LEE used an Internet search engine to research

MARABELLA and discovered a wanted poster published by the USMS, Joint New Hampshire

Fugitive Task Force.  LEE positively identified the man he knew as "Christopher Marabella" as

the same man depicted on the wanted poster for RABBIA.

13.     On April 2, 2015, LEE stated that he attempted to contact RABBIA via the Target

Cell Phone, but was unable to speak to RABBIA and declined to leave a message.

14.     On April 3, 2015, I contacted Special Agent Christopher GOULD of the U.S.

Department of Health and Human Services, Office of Inspector General.  GOULD was the case

agent on the original fraud investigation of RABBIA.  GOULD informed me that RABBIA

confessed during an interview in 2011, that he would pose as a homebuyer to gain access to

properties.  Once inside these properties, RABBIA would distract the real estate agent and

unsecure a window or door so that he could later return to the property to live there without

permission or burglarize the residence.

15.     RABBIA is known to have ties to Rhode Island, including prior contact with law

enforcement.  There is currently an outstanding warrant for the arrest of RABBIA in Rhode

Island for violating the terms of his probation on a charge of Driving Motor Vehicle Without

Consent.

16.     On April 7, 2015, I was advised by Shahram MOVAHEDI, an automobile dealer,

that an individual identifying himself as "Christopher Mirabella" had arranged to test drive a

vehicle at an automobile dealership in Allston, Massachusetts.  The individual provided the

Target Cell Phone as a contact number.  The individual drove off the lot with a Mercedes and

never returned.  As noted above, RABBIA's criminal history includes a prior conviction for

taking a vehicle without permission.  Additional "Christopher Mirabella" is an alias that has been

used by RABBIA in the past.

17.     Based upon the information set forth above, I believe that RABBIA is using the

Target Cell Phone.  I believe that obtaining location information about the Target Cell Phone will

assist me in locating RABBIA.

18.     In my experience fugitives often are aware that continued use of a cell phone can

lead to the discovery of their physical location and therefore if they continue using one particular

cell phone, they keep telephone calls short and turn the device off between phone calls.

Additionally, fugitives have been known to utilize multiple telephones and/or buy pay as you go

telephones in an effort to avoid detection and arrest.

19.     In my training and experience, I have learned that AT&T Mobility is a company

that provides cellular telephone access to the general public.  I also know that providers of

cellular telephone service have technical capabilities that allow them to collect and generate at

least two kinds of information about the locations of the cellular telephones to which they

provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and

(2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911

Phase II data provides relatively precise location information about the cellular telephone itself,

either via GPS tracking technology built into the phone or by triangulating on the device's signal

using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers"

(i.e., antenna towers covering specific geographic areas) that received a radio signal from the

cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and

can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device

does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is

typically less precise that E-911 Phase II data.

22.     Based on my training and experience, I know that AT&T Mobility can collect E-

911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to

determine the location of the Target Cell Phone on AT&T Mobility's network or with such other

reference points as may be reasonably available.

21.      Based on my training and experience, I know that AT&T Mobility can collect

cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

22.     Based on the foregoing, I request that the Court issue the proposed search

warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

23.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal

Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until

30 days after the collection authorized by the warrant has been completed.  There is reasonable

cause to believe that providing immediate notification of the warrant may have an adverse result,

as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the

Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure

would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in

Attachment B, which is incorporated into the warrant, the proposed search warrant does not

authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the

extent that the warrant authorizes the seizure of any wire or electronic communication (as

defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable

necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24.     I further request that the Court direct AT&T Mobility to disclose to the

government any information described in Attachment B that is within the possession, custody, or

control of AT&T Mobility.  I also request that the Court direct AT&T Mobility to furnish the

government all information, facilities, and technical assistance necessary to accomplish the

collection of the information described in Attachment B unobtrusively and with a minimum of

interference with AT&T Mobility's services, including by initiating a signal to determine the

location of the Target Cell Phone on AT&T Mobility's network or with such other reference

points as may be reasonably available, and at such intervals and times directed by the

government.  The government shall reasonably compensate AT&T Mobility for reasonable

expenses incurred in furnishing such facilities or assistance.

25.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

/s/ Christopher Deaton
Christopher Deaton
Deputy United States Marshal
United States Marshals Service

Subscribed and sworn to before on

April _____, 2015

                                                        _____
                                                        Andrea K. Johnstone
                                                        United States Magistrate Judge

## ATTACHMENT A

Property to Be Searched

1.      The cellular telephone assigned call number (617) 480-7583 (the "Target Cell Phone"), whose wireless service provider is AT&T Mobility, a company headquartered at 11760 U.S. Highway One, Mail Drop Suite 600, North Palm Beach, Florida.

2.       Information about the location of the Target Cell Phone that is within the possession, custody, or control of AT&T Mobility, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T Mobility, AT&T Mobility is required to disclose the Location Information to the government. In addition, AT&T Mobility must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T Mobility's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Mobility's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T Mobility for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).